## GRAVES *v.* KENNEDY.

1. SALE OF INSURANCE BUSINESS—VALUE OF RENEWALS—MISREP-RESENTATIONS—CUSTOM.

    One who is induced to purchase a half interest in an insurance business on a representation that the commissions for one renewal on the business in force at the date of the contract amount to a specified sum is entitled to damages where the commissions, excluding policy fees, are less than such amount, unless a custom to treat the policy fee as part of the commissions is shown to exist.

2. SAME—EXPERT TESTIMONY.

    Insurance men having a general knowledge, though no particular knowledge, of an insurance business which was sold under a guaranty that the renewals amounted to a specified sum, are competent to testify to what extent the value of the business is affected by the fact that the renewals are substantially less than the sum guaranteed.

3. SAME—AGREEMENT NOT TO RE-ENGAGE IN BUSINESS—BREACH.

    An insurance agent's agreement, on sale of his agency, not to re-engage in the insurance business except as a broker in the purchaser's employ, is violated by his handling as a broker the insurance of an estate of which he is executor, placing it with others than the purchaser.

Error to Jackson; Peck, J. Submitted January 25, 1899. Decided April 4, 1899.

*Assumpsit* by Ora J. Graves against George W. Kennedy for the breach of a contract of sale. From a judgment for plaintiff, defendant brings error. Affirmed.

*Blair, Smith & Townsend*, for appellant.

*Wilson & Cobb*, for appellee.

MONTGOMERY, J. The defendant, Kennedy, had, prior to May 30, 1891, been for many years engaged in the insurance business at Jackson as agent for a number of insurance companies. At the date named he entered into a written agreement with the plaintiff, by the terms of which the plaintiff became the purchaser of a one-half interest in the business and office furniture, the two parties agreeing to continue the business for one year as copartners, with the further provision that, at the end of the year, plaintiff should purchase the remaining interest of defendant for the additional sum of $1,000. This arrangement was carried out. The contract contained the following provisions:

"In consideration of the fulfillment of the stipulations and agreements herein mentioned to be performed by the party of the second part, the party of the first part hereby expressly agrees that he will never again enter into or be engaged as an agent for any insurance company with an interest in renewals in said county of Jackson, except as a broker in the employment of said second party; and said second party hereby expressly agrees to pay said first party the customary price for soliciting business, viz., one full commission of 15 per cent. and policy fee, when obtainable, with no interest in renewals in any way after full and complete sale of said business, as herein agreed and provided."

"Party of the first part hereby represents and guarantees to said second party that the commissions upon all the business now in force in and of the companies which he now represents, for one renewal of the same, amount to the sum of $2,850."

This suit was brought to recover damages for the breach of these undertakings, and on a trial before a jury plain-

tiff recovered a verdict of $1,450.30, and defendant brings error.

The case involved two distinct claims by the plaintiff, —the first, that the commissions for one renewal on the business in force at the date of the contract did not amount to $2,850; the second, that the defendant had violated his agreement not to again engage in business. Upon the first branch of the case the circuit judge permitted the defendant to offer testimony tending to show that a local custom prevailed of considering policy fees a part of the commissions, and that the commissions, including policy fees, amounted to a trifle more than $2,850. The evidence clearly shows that the commissions, excluding policy fees, were less than $2,850. The circuit judge left it for the jury to determine whether a custom to treat the policy fee as a part of the commissions was shown, and charged that, if it was not, the plaintiff was entitled to recover on this branch of the case, as damages, the difference between the value of the business as it was shown to have been in fact and the value which it would have had if it had been as guaranteed. These instructions were sufficiently favorable to defendant.

It is, however, insisted that error was committed in receiving certain testimony offered to show the difference between the value of the business as represented and as it turned out to be. The testimony was of this character: Witnesses were called, who had been or were engaged in the insurance business, and had some general knowledge, but not a particular knowledge, of the business in question; that is, none of them had been through the books to know the character of the risks,—whether mainly dwelling houses or commercial risks; but their testimony was to the effect that the value of an insurance business depends largely upon the value of the live business; *i. e.,* business which was likely to be renewed. We think it was competent to take the opinion of these witnesses upon the question of how the value of this business was affected by the fact that the renewal premiums were substantially

less than guaranteed by the defendant. The knowledge which they showed extends to this subject at least. It is difficult to see how the value could be otherwise shown. The cases cited by defendant's counsel are unlike the present.[1] It is true, as contended, that, before the testimony of a witness is receivable, it must appear that the witness has a knowledge of the subject which the jury do not possess, which enables him to give an opinion which will be of aid to the jury. Judged by this test, the testimony was admissible. The witnesses were familiar with the insurance business. They had a knowledge of what makes such a business valuable. The other testimony in the case showed the amount of commissions on renewal, and, aided by this fact, stated hypothetically, the witnesses were able to show how the fact that the renewals were less than the guaranteed amount affected the business.

Upon the other branch of the case, the court left it to the jury to find whether the defendant had violated the terms of his contract wherein he agreed that he would not again be engaged as an agent for any insurance company with an interest in renewals in Jackson county, except as a broker in plaintiff's employ. There was, we think, some evidence tending to support plaintiff's claim as to this branch of the case also.

It is contended that the court was in error in permitting the jury to consider the business which the defendant did for the Hibbard estate, of which he was executor. The court instructed the jury as follows:

"Some controversy has arisen in the case with reference to more or less of Mr. Kennedy's own private business and his business as an executor of the estate of the late Daniel B. Hibbard. I instruct you, gentlemen, that the contract only prohibited him from placing or handling insurance that he did as a broker. Now, whether he did the business that he controlled as executor as a broker or

---

[1] The following are the Michigan cases cited: *Dyer* v. *Rosenthal*, 45 Mich. 590; *Guest* v. *Insurance Co.*, 66 Mich. 100; *Williams* v. *Williams*, 82 Mich. 449; *Showman* v. *Lee*, 86 Mich. 566.

otherwise would determine whether or not the plaintiff here, Mr. Graves, could complain of it under this provision in the contract. If he did not handle it as a broker, then whatever he did with it would not violate these provisions of the contract. If, although he was an executor, he handled the business as a broker, and was able to give it any direction or place it with any agency that he chose, and, acting as such a broker, did give it to other agencies than the plaintiff, that would be a violation of the contract. If he did not, and was not so situated, and as to all business that he did not treat in that way, and was not able, by reason of his relation, to treat in that way, whatever he did with it, it could not be said that he violated this part of his contract in handling it."

While we agree with counsel for the defendant that the executor may not properly represent both the insurance company and the estate, the question, as affecting this case, is what he did do in this regard. And the instruction, we think, correctly states the rule which should be held applicable to the state of facts shown.

Some complaint is made of the language employed by plaintiff's counsel towards the defendant. In considering the language in the connection in which it was used, and in view of the caution of the court to the jury, we do not think the case should be reversed on this ground.

The other questions presented do not call for extended discussion. The judgment is affirmed.

The other Justices concurred.